## Botti v. East Pittsburgh Borough

*Ronald P. Koerner,* for plaintiff.
*T. P. Shearer,* for defendants.

WEKSELMAN, *J.,* July 2, 1976—Plaintiff filed an action of mandamus seeking an order requiring defendants to reinstate him to his position as a police officer in defendant Borough. A nonjury decision for defendants was entered and plaintiff's exceptions to that decision are now before the court en banc for disposition.

The facts are not in dispute. Plaintiff was employed as a police officer by defendant Borough in December, 1971. He had taken a civil service examination and had been duly certified as eligible for employment by the Borough's Civil Service Commission. On July 11, 1973, he received a letter from the Borough Secretary informing him that, "due to the economic difficulties of the Borough . . . and the need for an austerity program . . .," he

was to be furloughed from active duty as a police officer as of July 31, 1973. He was, in fact, furloughed on July 31, 1973, and has never been recalled to active duty. Plaintiff performed his duties as a police officer in a satisfactory manner and there was never any allegation that his furlough was occasioned for any reason other than economic. At the time of plaintiff's furlough, one other member of the force, the Chief of Police, was eligible for retirement, he being more than 55 years of age and having completed more than 25 years of continuous service on the police force. The Chief of Police was retained in service and still serves in that capacity.

The above recitation of the undisputed facts leads directly to the nub of plaintiff's position as it was presented at trial and as it is presented in his exceptions, and which position presents, insofar as we are able to determine, a question of first impression. He contends that a provision of the Borough Code of February 1, 1966, P. L. (1965) 1656, § 1190, as amended October 9, 1967, P. L. 399, sec. 1, 53 P. S. § 46190, requires that the Chief of Police be furloughed before plaintiff. The act in question provides in pertinent part that:

"If for reasons of economy or other reasons it shall be deemed necessary by any borough to reduce the number of paid employes of the police or fire force, then such borough shall apply the following procedure: (i) if there are any employes eligible for retirement under the terms of any retirement or pension law, then such reduction in numbers shall be made by retirement of such employes, starting with the oldest employe and following in order of age respectively . . ."

Plaintiff argues that the reduction in force

scheme contained in the statute makes no exception for a Chief of Police and that, therefore, the Chief being a "paid employe" of the police force eligible for retirement, his furlough and plaintiff's retention on the force is mandated by the plain language of the legislation. That argument has a great deal of first blush appeal, but the blush pales when the statute is read in conjunction with another section of the Borough Code and recognized principles of statutory construction are brought to bear on the question.

The other section of the Borough Code which must be scrutinized is §1184, 53 P.S. §46184. That section provides for the appointment of police officers and operators of fire apparatus in accordance with civil service procedures outlined in subdivision (j) of the code, 53P. S. § 46171 et seq. Section 1184 specifically excepts fire chiefs and police chiefs from the usual procedure and sets up a system of noncompetitive examination and appointment. Thus, the appointing authority could hire a new Chief of Police without reference to the remaining police force should it furlough the current chief. Plaintiff concedes that the Chief of Police may be replaced by someone not now employed on the force, but he contends that such a replacement would have less seniority than plaintiff and that, therefore, part (ii) of §1190[1] would become effective and require that the new chief be furloughed in order to accomplish the one person reduction in force which the Borough sought to effectuate. If plaintiff's position is correct, a

---

1. "(ii) if the number of paid employes in the police force or fire force eligible to retirement is insufficient to effect the necessary reduction in numbers, or if there are no persons eligible for retirement, . . ., then the reduction shall be effected by furloughing the man or men, including probationers, last appointed to the respective force . . ."

Borough situated in the specific circumstances of this case would be required to furlough its Chief of Police and, if it desired to appoint a new chief, would be limited to the appointment of one of the remaining members of the force, assuming that another member of the force could successfully complete the certification by noncompetitive examination requirement of §1184 of the Code.

To carry the results of plaintiff's contention one step further, if no member of the remaining force were able to satisfy the Civil Service Commission as to his qualifications for chief, the Borough would have to do without such an officer. Such a result could not have been within the contemplation of the General Assembly when it enacted the legislation in question.

The Statutory Construction Act of November 25, 1970, P.L. 707, 1 Pa. C.S.A. §1921 et seq., offers assistance in determining the issue at bar. That act, as well as much case law, makes it clear that where "the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." The act also states that "[t]he object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions." Judges are also enjoined by the act to consider the presumptions that "the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable;" that "the General Assembly intends the entire statute to be effective and certain;" and that "the General Assembly intends to favor the public interest as against any private interest." §1922. Taking these standards into consideration, we must determine whose view of the law is correct.

We conclude that even though §1184 of the code provides for the appointment of a Chief of Police by procedures outside of the civil service procedures which apply to other members of the force and thereafter makes him "subject to all the provisions of this subdivision," the reduction in force provisions of §1190 cannot apply. If that provision were to apply, all of the provisions of the act, could not be given effect. That is so because, as hereinabove outlined, the Borough would be precluded from going outside of the police force to fill the office of Chief of Police and could be precluded from filling the office at all. That, we believe, would be an absurd result. Moreover, the public interest involved in having a police force headed by a properly qualified chief clearly outweighs the private interest of plaintiff in retaining his position on the force.

The Statutory Construction Act also provides that "when the words of the statute are not explicit, the intention of the General Assembly may be ascertained by considering among other matters:. . .(3)The mischief to be remedied. (4)The object to be attained." § 1921. We believe that the reference to "employe" in § 1190 is not sufficiently explicit in the context of the case at bar as to preclude its interpretation by reference to the standards quoted in the sentence next preceding. Here, it is obvious that the General Assembly sought to remedy the mischief which might be involved in the furloughing of police officers for economy reasons without reference to the length of service of the officer or officers to be furloughed. The object to be attained was to create a system whereby police officers would be retained in service during reductions in force in accordance with

their seniority by requiring the furlough of officers eligible for retirement first, and officers with lesser seniority second, thereby preventing the municipal officials from furloughing active police officers on any arbitrary or capricious basis. In accomplishing that object and remedying possible mischief, the General Assembly could not have intended to place the municipality in a position where its very right to appoint a police chief would be placed in jeopardy. We believe that the construction which we place on the Code makes possible the effectuation of all of its provisions by excepting from the reduction in force provisions of the Code those officers who, in accordance with the Code, are not covered by the usual appointment procedure.

Plaintiff's exceptions will be dismissed.

## ORDER

And now, July 2, 1976, plaintiff's exceptions to nonjury decision are dismissed and it is ordered, adjudged and decreed that judgment be entered on the nonjury decision.